IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| MARGUETTA HORN, | ) | |
| | ) | CASE NO.  CIV 03-009-S-MHW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM DECISION** |
| PRISON HEALTH SERVICES, INC., | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Currently pending before the Court for its consideration is Defendant's Summary

Judgment Motion (docket # 21), filed February 23, 2004.  Having reviewed all briefing

submitted, as well as other pertinent documents in the Court's file, and having heard oral

arguments, the Court finds that, for all of the following reasons, Defendant's motion should be

denied.

**I.**
**Background.**

Plaintiff Marguetta Horn was hired as a health services technician ("HST") by Prison

Health Services[1] ("PHS") to work at the Idaho State Correctional Institution ("ISCI") on April 8,

---

[1]According to its web site, PHS provides  healthcare services to prisons and jails at the local, county, state and federal levels nationwide.   PHS, in combination with its sister company, Secure Pharmacy Plus, services more than 380 jail and prison sites around the country, covering approximately 270,000 inmates in 38 states.

2002.[2]  An essential function of Horn's duties was to "[administer] medication under the supervision of a Registered Nurse after completion of the approved medication administration course."  (Bush Affidavit, Exhibit 2).  Between the dates of April 8 and July 2, this involved giving an inmate-patient a packet of pills that had been prepared beforehand for that specific inmate and labeled with the inmate's name.

On July 2, 2002, Horn was informed by RN Edith Roe and Steve Pillott that she  was going to be transferred to the night shift and that part of her duties would entail performing "pill pass" out of the dispensary room.[3]  Pill pass occurs through a process where an inmate presents himself and shows his identification badge.  The person administering medication would then look up that inmate's medication administration record ("MAR"), and would go to the bulk supply of medications in the dispensary and pull the pills for that inmate from the bulk quantities, place them in a unit container, and hand them to the inmate.  Horn told Steve Pillott that she was not qualified to perform this function because she was not a nurse and  had not been trained.

On July 8, 2002, during the evening shift, Horn claims that she was directed by her supervising nurse, RN Theresa Thorton that she would be doing pill pass that evening out of the dispensary.  Horn further claims that she refused to do so on the ground that she was not trained or qualified to pass pills and for her to do so would be in violation of Idaho law.  Although Horn was an at-will employee, she alleges that she was wrongfully terminated in violation of public policy because she refused to perform an illegal act.

---

[2]Marguetta Horn worked the day shift from April 8 to July 2, 2002.

[3]The secure room where the medication is kept for "pill pass" was referred to by the witnesses by several different names.  For consistency, the Court will refer to it as the "dispensary."

Defendant's version of the events are different.  In response to inquiries from the Idaho Department of Labor in connection with Horn's claim for unemployment benefits, PHS states that Horn was going to start training on the day she refused to do the work and she was not going to be passing out medication.  Allegedly she was to be trained for a week in the dispensary on the proper procedures for dispensing the medication and then was to attend a four hour class taught by RN Edith Roe.  PHS contends that Horn was properly terminated for insubordination for failure to participate in the training. ( Bush Affidavit, Exhibits 6 & 8).

## II.
## Standard of review.

When reviewing a motion for summary judgment, the proper inquiry is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c) (1993).  A moving party who does not bear the burden of proof at trial may show that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the [non-moving] party's case." *Celotex Corp v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  It is not enough for the non-moving party to "rest on mere allegations of denials of his pleadings." *Id.*  Genuine factual issues must exist that "can

be resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." *Id.* at 250.

"When determining if a genuine factual issue . . . exists, . . . a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability."  *Id*. at 249-250. "The mere existence of a scintilla of evidence in support of the [plaintiff's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiff]." *Id.*

The Ninth Circuit has consistently applied the standard for granting summary judgment.

*Musick v. Burke*, 913 F.2d 1390 (9th Cir. 1990); *Pelletier v. Federal Home Loan Bank*, 968 F.2d

865 (9th Cir. 1992); *Bieghler v. Kleppe*, 633 F.2d 531 (9th Cir. 1980).

In determining whether a material fact exists, facts and inferences must be viewed most

favorably to the non-moving party.  To deny the motion, the Court need only conclude that a

result other than that proposed by the moving party is possible under the facts and applicable

law.  *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 591 (9th. Cir. 1981).

The Ninth Circuit has recently emphasized that summary judgment may not be avoided

merely because there is some purported factual dispute, but only when there is a "genuine issue

of material fact."  *Hanon v. Dataproducts Corp*., 976 F.2d 497 (9th Cir. 1992).

> In order to withstand a motion for summary judgment, the non-moving party (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882

F.2d 371 (9th Cir. 1989).

**Memorandum Decision and Order - Page 4**

### III.
### Motion for summary judgment.

Although at-will employees can generally be terminated for any reason, or no reason at all, an exception exists when the employer's motivation for discharge contravenes public policy. *Sorensen v. Comm Tek, Inc.*, 118 Idaho 664, 668, 799 P.2d 70 (1990).  The exception protects employees "who refuse to commit unlawful acts, who perform important obligations, and exercise certain legal rights or privilege."  *Id*.  Horn was an at-will employee who claims that the "unlawful act" exception applies to her refusal to pass pills from the dispensary at ISCI.

The basis for Defendant's summary judgment motion is that Horn was never asked to do an illegal act in contravention of public policy.  Recognizing that disputed issues of fact exist as to whether or not Horn was or was not offered training before she was to do the pill pass, Defendant takes the position that under Idaho law, it does not make any legal difference whether Horn was or was not trained.  Defendant asserts that any unlicensed person can dispense medication pursuant to the provisions of Idaho Code § 54-1804.  This code provision states in essence that non-licensed assistants can perform the functions of a registered nurse (administer medication) so long as they perform that function at the specific direction of a physician.  At times Horn seems to suggest a position at the opposite end of the spectrum, that no matter what training a HST may receive at ISCI, she could never be qualified to dispense or administer mediation.

Since it is the Defendant's Motion for Summary Judgment, the Court will limit itself to the narrow issue raised by the Defendant,  whether under the facts of this case, viewed in light most favorable to the non-moving party (ordered to do pill pass with no training), would Horn's administration of medication be under the specific direction of a physician?  Defendant, PHS,

asserts that the Court can find, as a matter of law, that the act Horn was asked to perform was lawful and therefore not against public policy.  Furthermore, Defendant contends that if the pill pass from the medication room by an HST was lawful, then there is no genuine issue of material fact and the court should dismiss the case under Fed. R. Civ. P. 56(c).  This argument is based on two prongs, first, a Legal Guideline of the Attorney General dated January 15, 1993 ("Legal Guideline") and second, Idaho Code § 54-1804.

Defendant's first argument relies heavily on the Legal Guideline authored by then Deputy Attorney General John J. McMahon, as to whether Idaho Code § 54-1402(b)(1)(f) and 2(d) of the Nursing Practice Act mandated that only licensed nurses be authorized to perform functions such as administration of medication and treatments prescribed by physicians.  The Legal Guideline noted that while the statute is unclear as to the extent that a physician may delegate medical duties, the statutory scheme in Idaho does not exclusively reserve to licensed nurses the ability to administer prescription medication, and, "it follows that nonlicensed assistants as referred to in Idaho Code § 54-1804(1)(g) are not prohibited from administering medication because the legislature would have so stated if it had so intended."

The second prong of Defendant's argument relies on Idaho Code § 54-1804 which states non-licensed assistants can perform the functions of a licensed nurse so long as they perform that function at the specific direction of a physician.  Defendant asserts that when the Legal Guideline and the Idaho Code are read in conjunction, Idaho Law allows an unlicenced HST to preform duties such as the pill pass from the medication room at ISCI so long as she is under the *control and supervision of a physician*.  Defendant then argues that the supervision of Dr. Baillie, the PHS staff physician, was sufficient to allow Horn, an unlicensed HST, to administer

medication to the inmates from the dispensary at ISCI.  In conclusion, Defendant requests that the court determine that the termination of Horn was not against public policy because Dr. Baillie had sufficient control and supervision over her duties to comply with Idaho Law whether or not she had received additional training.

Pursuant to Idaho Code § 54-1804(g), the scope of unlicenced medicine includes  "a person administering a remedy, diagnostic procedure or advice as *specifically directed by a physician*." (emphasis added).  Furthermore, a physician maintains control and supervision where the nonlicenced employee is trained, and the physician provides written instructions.  *PM & R Associates v. Workers' Compensation Appeals Board*, 80 Cal.App.4th 357 (Ct.App. 5th D. 2000).  In that case assistants could perform physical modalities on patients, consisting of massages, electrical stimulation, and ultrasound where the assistants were first sufficiently trained and then provided written instructions by the physician.  *Id*.

In the present case Defendant, a national healthcare organization, created policies and procedures to abide by local, state and federal law to ensure the healthcare of inmates across the country.  This large corporation hired doctors who provided medical care to inmates within the confines of guidelines, policies and procedures that were already developed by PHS.  Dr. Baillie was one of the doctors hired into the existing framework of PHS.   PHS obviously realized that its employee/physicians would be providing supervision and control over other licensed and nonlicensed employees and this would entail detailed job descriptions as to what activities that particular employee could perform and what training the employee would be expected to have before engaging in certain medical activities.  In the Court's view, it is these detailed job descriptions and training that form the basis and the underpinning of a physician's control and

supervision over nonlicensed (HST) employees, to ensure they would be carrying out healthcare "as specifically directed by a physician..."

According to PHS  policy, prescriptions Dr. Baillie wrote were to be administered by either a licenced nurse, or another employee under PHS guidelines to ensure proper control and supervision necessary to comply with all relevant laws.  One such guideline was set out in the job description for an HST.  The job description clearly set fourth that a HST "administers medication under the supervision of a registered nurse *after completion of the approved medication administration course* (Bush Affidavit, Exhibit 2) (emphasis added).  Although Dr. Baillie provided written instructions in compliance with Idaho Code § 54-1804(g) and similar to the instructions in *PM & R,* it is clearly a disputed issue of material fact whether Defendant provided, or was going to provide the proper training to Horn.

Arguably PHS's guidelines, procedures and job description , when coupled with both on the job training and the four hours of classroom instruction, could be sufficient to establish control and supervision over Horn by the staff physician, Dr. Baillie.  However the Court is precluded from reaching any such determination since both parties agree that no training occurred and the record is not developed on this point.

There remains a disputed issue of material fact whether Horn was offered the training and refused to go through the training and was then fired for insubordination, or as she claims, was told to administer medication without the training. Therefore Defendant's Motion for Summary Judgment is denied.

**Memorandum Decision and Order - Page 8**

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises,

**IT IS HEREBY ORDERED that:**

       1)     Defendant's motion for summary judgment (docket # 21), filed Feb 23, 2004, is DENIED.

DATED:  **June 22, 2005**

Honorable Mikel H. Williams
United States Magistrate Judge